UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JANE DOE, et al.,

Plaintiffs,

v.

WALMART INC., et al.,

Defendants.

Case No. 18-CV-02125-LHK

**ORDER GRANTING MOTION TO DISMISS AND DENYING AS MOOT MOTION TO TRANSFER**

Re: Dkt. No. 125

Plaintiffs Jane Doe, Mary Moe, and John Roe bring this putative class action suit against: Darrell Huntsman, Glenn Bingham, Brian Ashton, Jeffrey Mitchell, Richard Haddrill, Chris Cottrell, Jeff Powers, Tim Hickey, and Jeff Stringer (collectively, "Individual Defendants"); Walmart Inc. ("Walmart"); Burlington Coat Factory Warehouse Corp. ("Burlington Coat Factory"); Bloomingdales, Inc. ("Bloomingdales"); The Kroger Co. ("Kroger"); Sportman's Warehouse, Inc. ("Sportsman's Warehouse"); 99 Cents Only Stores LLC (99 Cents Only); and The Save Mart Companies, Inc. ("Save Mart") (collectively, "Store Defendants"); and Decathlon Capital Partners LLC ("Decathlon"). Defendants are alleged to have violated 18 U.S.C. § 1962, *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). ECF No. 62 at ¶¶ 62-69 ("FAC"). Before the Court is Defendants' omnibus motion to dismiss, or in the alternative, motion

to transfer to the District of Utah.[1] ECF No. 125-1 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendants' motion to dismiss and DENIES as moot Defendants' motion to transfer.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff Jane Doe, a resident of Loganville, Georgia, was accused of shoplifting from a Walmart store in Snellville, Georgia. FAC at ¶ 10. Plaintiff Mary Moe, a resident of Hilliard, Florida, was accused of shoplifting from a Walmart store in Jacksonville, Florida. *Id.* at ¶ 11. Plaintiff John Roe, a resident of Houston, Texas, was accused of shoplifting from a Walmart store in Alvin, Texas. *Id.* at ¶ 12.

Plaintiffs were given a choice: either participate in a program run by non-party Corrective Education Company, LLC ("CEC"), or be referred to law enforcement. *Id.* at ¶¶ 2-3, 10-12. CEC offers a program in which participants take an online life-skills course for a fee of $400 or $500. *Id.* at ¶ 33. To be eligible to participate in the CEC program, participants must sign an admission of guilt over the shoplifting allegations, which would not be used if the participants complete the CEC program. *Id.*

All three Plaintiffs chose to participate in the CEC program in lieu of a law enforcement referral. In total, Plaintiff Doe has paid $500 to CEC, Plaintiff Moe has paid $400 to CEC, and Plaintiff Roe has yet to make any payments to CEC, which has sent Roe's CEC account to collections. *Id.* at ¶¶ 10-12. The crux of Plaintiffs' claims is that the Defendants conspired with each other to extort unlawful payments from Plaintiffs and the putative class members through a pattern of racketeering activity. *Id.* at ¶ 65. Defendants allegedly coerced Plaintiffs and the putative class members "into making payments to CEC by threatening to report Plaintiffs and other Class members to criminal authorities for alleged shoplifting." *Id.* at ¶ 66.

---

[1] Not every Defendant joins every part of the brief. For instance, only the Individual Defendants, Walmart, Sportsman's Warehouse, 99 Cents Only, Save Mart, and Decathlon seek to transfer the action. Mot. at 28 n.34.

Plaintiffs bring this RICO suit against 9 Individual Defendants, including 3 co-founders of CEC, 2 members of CEC's board of directors, 2 current CEC corporate officers, and 2 CEC former employees. None of the Individual Defendants are alleged to be a resident of California. *Id.* at ¶¶ 13-21.

Plaintiffs also bring suit against 7 Store Defendants. Defendants 99 Cents Only and Save Mart are alleged to be headquartered in California and transact business in the District. *Id.* at ¶ 9. The remaining Store Defendants—Walmart, Burlington Coat Factory, Bloomingdales, Kroger, and Sportsman's Warehouse—are alleged to have stores in this District, but are not alleged to be incorporated or headquartered in California. *Id.* at ¶¶ 22-28. The Store Defendants are all alleged to have some relationship with CEC by referring individuals suspected of shoplifting to participate in the CEC program. *Id.* at ¶¶ 39, 41-43, 45-48.

The remaining Defendant, Decathlon, is alleged to be a Delaware LLC headquartered in Park City, Utah, and Palo Alto, California (part of this District). *Id.* at ¶ 31. Decathlon is an investment firm that has provided funding to CEC. *Id.* at ¶¶ 31, 49.

### B. Procedural History

On April 9, 2018, Plaintiffs filed their first complaint. ECF No. 1. On June 6, 2018, Plaintiffs filed a first amended complaint. ECF No. 62. On July 12, 2018, Plaintiffs voluntarily dismissed without prejudice their claims against Defendant DSW, Inc. and Abercrombie & Fitch Management Co. ECF Nos. 77, 78.

On October 17, 2018, the Defendants filed their omnibus motion to dismiss or transfer. On November 28, 2018, Plaintiffs filed their opposition to Defendants' omnibus motion to dismiss or transfer. ECF No. 131 ("Opp."). On January 4, 2019, Defendants filed their reply. ECF No. 132 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(1)

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. While lack of statutory standing requires

dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires

dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*,

658 F.3d 1060, 1067 (9th Cir. 2011). "A Rule 12(b)(1) jurisdictional attack may be facial or

factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack,

the challenger asserts that the allegations contained in a complaint are insufficient on their face to

invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss

under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable

inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a

legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

2014). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the

allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for

Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review

evidence beyond the complaint without converting the motion to dismiss into a motion for

summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's

allegations" in deciding a factual attack. *Id.* Once the defendant has moved to dismiss for lack of

subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the

Court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir.

2010).

### B. Motion to Dismiss under Rule 12(b)(2)

In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure

12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the

burden of establishing that jurisdiction exists. *See Schwarzenegger v. Fred Martin Motor Co.*, 374

F.3d 797, 800 (9th Cir. 2004). When the motion to dismiss constitutes a defendant's initial

response to the complaint, the plaintiff need only make a prima facie showing that personal

jurisdiction exists. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th

Cir.1977). While a plaintiff cannot "'simply rest on the bare allegations of its complaint,'

uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties

4

over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977), and citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996)).

### C. Motion to Dismiss under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### D. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.  DISCUSSION

In the omnibus motion to dismiss, Defendants assert numerous grounds on which to dismiss the complaint, or in the alternative, transfer the action to the District of Utah. First, various Defendants[2] argue that the Court lacks personal jurisdiction over most defendants. Second, various Defendants[3] argue that the Plaintiffs lack standing to assert their RICO claim against most defendants. Third, all Defendants[4] move to dismiss the action for failure to state a RICO claim. Fourth, in the event the Court does not dismiss the action, various Defendants[5] move to transfer the case to the District of Utah. Fifth, the Individual Defendants move to dismiss under *forum non*

---

[2] The Defendants moving to dismiss for lack of personal jurisdiction are the Individual Defendants and Walmart, Sportsman's Warehouse, Kroger, Burlington, and Bloomingdales (i.e., all the Store Defendants not domiciled in California). Mot. at 4 n.9.

[3] The Defendants moving to dismiss for lack of standing are Sportsman's Warehouse, Kroger, Burlington Coat Factory, Bloomingdales, 99 Cents Only, Save Mart, and Decathlon. Mot. at 11 n.11.

[4] Defendant 99 Cents Only joins only part of Defendants' briefing regarding Plaintiffs' failure to state a claim. Mot. at 15 n.16.

[5] The Defendants moving to transfer to the District of Utah in the event the Court does not dismiss this action are the Individual Defendants, Walmart, Sportsman's Warehouse, 99 Cents Only, Save Mart, and Decathlon. Mot. at 28 n.34.

*conveniens*. The Court addresses each issue in turn.

## A. Personal Jurisdiction

The Defendants moving to dismiss for lack of jurisdiction are Walmart, Sportsman's Warehouse, Kroger, Burlington, Bloomingdales, and the Individual Defendants.

First, to determine the propriety of asserting personal jurisdiction over a defendant, the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute and comports with the demands of federal due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, and therefore the jurisdictional analyses under state law and federal due process are the same. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). Moreover, pursuant to Federal Rule of Civil Procedure 4(k)(1)(C), serving a summons establishes personal jurisdiction over a defendant when authorized by a federal statute. In RICO actions, Congress authorized nationwide service of process over a defendant if "the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. § 1965(b).

The Court first analyzes whether there is general jurisdiction over the Defendants. Then,

United States District Court
Northern District of California

the Court addresses specific jurisdiction. Finally, the Court discusses whether 18 U.S.C. § 1965(b) of the RICO statute provides jurisdiction.

### 1. General Jurisdiction

General jurisdiction exists where a defendant is physically present or where a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801. "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradig[matic] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). The Court addresses whether the Court may exercise general jurisdiction over any of the Individual Defendants, then the Store Defendants, and finally Decathlon.

#### a. Individual Defendants

None of the Individual Defendants are alleged to have any connection with California whatsoever, let alone continuous and systematic contacts with California. Therefore, the Court does not exercise general jurisdiction over the Individual Defendants.

#### b. Store Defendants

The Court does not exercise general jurisdiction over any of the Store Defendants (except for 99 Cents Only and Save Mart, which are domiciled in California and do not challenge personal jurisdiction). Courts have rejected the notion that "general jurisdiction is appropriate whenever a corporation engages in a substantial, continuous, and systematic course of business in a state," because "[o]nly in an exceptional case will general jurisdiction be available" other than where a business is incorporated or has its principal place of business. *Martinez*, 764 F.3d at 1070. Additionally, the Plaintiffs do not contend that the Store Defendants (except for 99 Cents Only and Save Mart) are subject to the Court's general jurisdiction. Therefore, except for 99 Cents Only

8

and Save Mart, which are subject to the Court's general jurisdiction, the remaining Store Defendants are not subject to the Court's general jurisdiction.

### c. Decathlon

Decathlon is subject to the Court's general jurisdiction because one of its headquarters is in Palo Alto, California. FAC at ¶ 31. General jurisdiction is available where a corporation has its principal place of business. *Martinez*, 764 F.3d at 1070.

### 2. Specific Jurisdiction

If general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant's "contacts with the forum give rise to the cause of action before the court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). Thus, a plaintiff's injury must be "tethered" to the forum state in a "meaningful way." *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015).

Here, none of Plaintiffs' alleged injuries occurred in California. Doe was detained at a Walmart store in Georgia, Moe was detained at a Walmart store in Florida, and Roe was detained at a Walmart store in Texas. FAC at ¶¶ 10-12.

The *Republic of Kazakhstan v. Ketebaev* court found that there was no specific jurisdiction over a defendant who allegedly injured a plaintiff with actions that "appear to have occurred entirely outside California." 2017 WL 6539897, at *7 (N.D. Cal. Dec. 21, 2017). Similarly, the *Gabor v. Deshler* court found no specific jurisdiction over defendants where the "challenged conduct that underpin[ned] Plaintiffs' causes of action" took place in Washington, not California. 2018 WL 2762411, at *9-10 (N.D. Cal. June 7, 2018).

Therefore, the Court cannot exercise specific jurisdiction over any of the Defendants.

### 3. 18 U.S.C. § 1965(b)

Congress authorized nationwide service of process under the RICO statute if "the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. § 1965(b). "Under 18 U.S.C. § 1965(b), a court may exercise personal jurisdiction over non-resident participants in an alleged RICO conspiracy, even if those parties would otherwise not be amenable to jurisdiction in that court." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1161 (N.D. Cal.

9

2014). "In order to establish personal jurisdiction under Section 1965(b), Plaintiffs must show: (1) the Court has personal jurisdiction over at least one of the participants in the action; (2) there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators; and (3) the facts show a *single nationwide* RICO conspiracy exists." *Gilbert v. Bank of America*, 2014 WL 4748494, at *4 (N.D. Cal. Sept. 23, 2014) (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)) (internal quotation marks omitted).

Defendants do not challenge prongs (1) and (2) of the requirements under § 1965(b). Mot. at 9. Rather, Defendants argue that Plaintiffs have not alleged that a single nationwide RICO conspiracy exists. The Court agrees with the Defendants. *Id.*



A single nationwide conspiracy exists only if a plaintiff has alleged that the defendants have "specific knowledge" of or participate in *one* conspiracy. *Butcher's Union*, 788 F.2d at 539. Here, there are simply no allegations specifying what relationship each Defendant had with one another. Plaintiffs fail to identify any Defendant with any kind of relationship, business or otherwise, with any other Defendant. As Plaintiffs' own figure (above) shows, the only alleged commonality each of the Defendants have with one another is CEC, whom Plaintiffs have chosen

Case No. 18-CV-02125-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING AS MOOT MOTION TO TRANSFER

not to sue. FAC at ¶ 6.[6] However, that is not enough to allege one single nationwide conspiracy.

For example, in *Butcher's Union*, the complaint alleged a civil RICO claim in which defendant lawyers conspired with four separate employers to engage in union-busting activities. 788 F.2d at 537. "The [plaintiff] Unions concede[d] that the defendant employers had no connection with each other beyond the use of the same lawyers and that each individual conspiracy was largely independent." *Id.* Ultimately, the *Butcher's Union* court concluded that the plaintiff unions failed to allege that a single nationwide RICO conspiracy existed because "none of the four defendant employers had any specific knowledge of or participation in any of the other conspiracies." *Id.* at 539. Like in *Butcher's Union*, here, there are no allegations that Kroger, for instance, had specific knowledge of or participation in Walmart's relationship with CEC.

Similarly, in *Gilbert*, the court granted a motion to dismiss for failure to allege a single RICO conspiracy under § 1965(b) because "[a]t best . . . Plaintiffs' allegations might show two separate conspiracies: one between the MoneyMutual Defendants and the Rare Moon Defendants; and one between the MoneyMutual Defendants and the Cane Bay Defendants." 2014 WL 4748494, at *5. Here, Plaintiffs at best allege multiple individual conspiracies with CEC, not one unified conspiracy amongst all the Defendants.

In response to Defendants' arguments, Plaintiffs rely on *United States v. Frega*, 179 F.3d 793, 819 (9th Cir. 1999), to argue that "[i]t is not necessary to plead bilateral relationships among each member of the conspiracy," Opp. at 8. *Frega*, however, is highly distinguishable because Plaintiffs are citing a dissent in a criminal RICO case that does not interpret the nationwide service statute at 18 U.S.C. § 1965(b) for civil RICO claims.

Plaintiffs also rely on *Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, 2007 WL 5289737, at *5 (C.D. Cal. Sept. 12, 2007), for the notion that "both the Ninth Circuit and the Supreme Court have required that a plaintiff make a showing that the defendant intended to enter into an agreement or that the defendant had knowledge of the essential nature of the conspiracy."

---

[6] Abercrombie & Fitch and DSW appear in the figure from Plaintiffs' first amended complaint, but were dismissed after Plaintiffs' first amended complaint was filed.

Case No. 18-CV-02125-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING AS MOOT MOTION TO TRANSFER

However, Plaintiffs' amended complaint has not made either showing. Moreover, *Rocawear* ultimately concluded that the plaintiff "failed to plead facts sufficient to indicate that . . . [defendants] were part of a single nationwide conspiracy." *Id.* at *6.

Plaintiffs further argue that even if bilateral relationships among the Defendants were required, the complaint sufficiently alleges one nationwide conspiracy because upon detaining a shoplifter, a store would consult CEC's central database to determine whether to offer the CEC program to the shoplifter. Opp. at 10. The only two substantive allegations regarding this database are that after a shoplifter is apprehended: (1) "[t]he retailer conducts a background check against databases, including a database maintained by Corrective Education, to review the [shoplifter's] criminal record"; and (2) that the database is consulted to see if there are any outstanding warrants for the shoplifter. FAC at ¶¶ 3, 33. However, Plaintiffs' argument that the database provides the link between the Store Defendants falls flat as Plaintiffs' allegations about the database fail to demonstrate any kind of relationship among the Store Defendants. One store does not necessarily participate in the alleged conspiracy between CEC and another store simply by consulting the CEC database. For instance, there are no allegations that the Store Defendants can communicate with each other through the database or share information via the database. There is no allegation that the database includes Store Defendants' information. According to the amended complaint, retailers consult the database to see if a shoplifter has a criminal record or outstanding warrants. *Id.* Thus, use of the CEC database says nothing about the interrelationships among the Store Defendants.

Under Federal Rule of Civil Procedure 4(k)(2)(B), for a claim arising under federal law, serving a summons establishes personal jurisdiction over a defendant if exercising jurisdiction is consistent with federal law. Therefore, Plaintiffs argue that personal jurisdiction is established by the service of a summons. Specifically, Plaintiffs claim that 18 U.S.C. §§ 1965(a) and 1965(d) are "both nationwide service of process provisions that create personal jurisdiction over any defendant that resides *or* has an agent *or* transacts its affairs in the district." Opp. at 6. However, Plaintiffs fail to cite, and the Court does not find, any Ninth Circuit authority holding that 18 U.S.C. §§

1965(a) and 1965(d) are nationwide service of process provisions. Moreover, no court has found that these statutory provisions confer jurisdiction. Specifically, the *Bray v. Kendall* court found that given the "Ninth Circuit's position [in *Butcher's Union*] with respect to subsection (b) [of § 1965], its silence with respect to subsection (d) [of § 1965], and other circuit courts' rejection of nationwide service under subsection (d) [of § 1965], this Court will not allow Plaintiff to rely on subsection (d) [of § 1965] alone to establish jurisdiction." 2010 WL 56181, at *5 (N.D. Cal. Jan. 5, 2010). Similarly, courts have found that § 1965(a) does not confer jurisdiction and is instead a venue statute. *See Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*, 2018 WL 3439372, at *4 n.6 (N.D. Cal. July 17, 2018) (interpreting § 1965(a) to be a venue statute); *Asmodus, Inc. v. Ou*, 2016 WL 7049244, at *2 (N.D. Cal. Dec. 5, 2016) (same). Thus, the Court finds that §§ 1965(a) and 1965(d) are irrelevant here to establish jurisdiction over the Defendants.

### 4. Summary

In conclusion, the Court DENIES the motion to dismiss for lack of jurisdiction over Save Mart, 99 Cents Only, and Decathlon.

The Court GRANTS without prejudice the motion to dismiss for lack of jurisdiction over the Individual Defendants and Walmart. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

The Court GRANTS with prejudice the motion to dismiss for lack of jurisdiction over Burlington Coat Factory, Bloomingdales, Kroger, and Sportsman's Warehouse. As discussed in the following section of this Order, these Defendants are dismissed with prejudice because of Plaintiffs' lack of Article III standing. Thus, leave to amend jurisdictional allegations is futile and therefore DENIED.

Moreover, the Court DENIES Plaintiffs' request for jurisdictional discovery. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even

13

limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006); *see also*

*Adobe Sys., Inc. v. Cardinal Camera & Video Center, Inc.*, 2015 WL 5834135, at *6 (N.D. Cal.

Oct. 7, 2015) (denying jurisdictional discovery based on "speculative allegations" that records

"may . . . indicate direct sales and shipments of infringing . . . products to California consumers").

Here, the claims of personal jurisdiction are attenuated because there are no allegations

whatsoever of a nationwide RICO conspiracy amongst the Defendants. Thus, no jurisdictional

discovery is warranted.

### B. Standing

Sportsman's Warehouse, Kroger, Burlington Coat Factory, Bloomingdales, 99 Cents Only,

Save Mart, and Decathlon argue that Plaintiffs lack Article III standing and statutory standing

under the RICO statute. Mot. at 11 n.11. The Court addresses each argument in turn.

### 1. Article III Standing

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of

Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing requires that

(1) the plaintiffs suffered an injury in fact, i.e., "an invasion of a legally protected interest which is

(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2)

the injury is "'fairly traceable' to the challenged conduct"; and (3) the injury is "likely" to be

"redressed by a favorable decision." *Id.* at 560-61. Here, certain Defendants—Sportsman's

Warehouse, Kroger, Burlington Coat Factory, Bloomingdales, 99 Cents Only, Save Mart, and

Decathlon—argue that Plaintiffs lack Article III standing because Plaintiffs have not alleged that

their alleged injuries are traceable to any conduct by those Defendants. The Court finds these

Defendants' arguments convincing.

"To demonstrate that they have standing, named plaintiffs in a class action suit must plead

facts showing standing as to each defendant, including alleging that they were injured by each

such defendant." *Perez v. Wells Fargo & Co.*, 2015 WL 1887354, at *5 (N.D. Cal. Apr. 24, 2015);

*see also Easter v. American West Fin.*, 381 F.3d 948, 961-62 (9th Cir. 2004) ("As to those trusts

which have never held a named plaintiff's loan, Borrowers cannot allege a traceable injury and

14

lack standing."); *In re Carrier IQ, Inc.*, 78 F. Supp 3d 1051, 1069 (N.D. Cal. 2015) ("*Easter* stands for the unremarkable proposition that for a class action to proceed between the named parties, each named plaintiff must have standing to sue at least one named defendant; to hold each defendant in the case, there must be at least one named plaintiff with standing to sue said defendant.").

Here, Plaintiffs' participation in the CEC program was a consequence of Plaintiffs' detention by Walmart for shoplifting. FAC at ¶¶ 10-12. No other Store Defendants detained the Plaintiffs for shoplifting. Thus, Plaintiffs' allegations of harm stem from CEC's relationship with Walmart. None of the Plaintiffs can say they were injured by, for instance, 99 Cents Only, because 99 Cents Only had nothing to do with Plaintiffs' participation in the CEC program, which is alleged to be at the center of Defendants' extortionary scheme. Moreover, Plaintiffs' only allegation pertaining to Decathlon was that Decathlon "provided funding for the extortion scheme." *Id.* at ¶ 49. However, Plaintiffs do not show how Decathlon, by funding CEC, has injured them in any way. It was CEC, not Decathlon, that charged Plaintiffs the $400 or $500 to participate in the CEC program. *Id.* at ¶ 33.

Analogously, in *Perez v. Nidek Co.*, a group of farsighted plaintiffs brought a putative class action against two groups of doctors. 711 F.3d 1109, 1112 (9th Cir. 2013). The farsighted plaintiffs all underwent Laser in Situ Keratomileusis eye surgery, commonly known as "LASIK." *Id.* Plaintiffs claimed that the two groups of doctors conducted the LASIK surgery when the surgery was not yet approved by the FDA for treating farsightedness. *Id.* Plaintiffs allege that "the defendants engaged in a nationwide scheme to modify the approved Laser to enable it to correct farsightedness before it was approved for that purpose." *Id.* The first group of doctors actually performed the LASIK surgery on the *Perez* plaintiffs. *Id.* at 1113. The second group of doctors did not perform any surgeries on the named plaintiffs but "allegedly performed surgery on other individuals in the proposed class." *Id.* The Ninth Circuit held that with respect to the second group of doctors who did not perform LASIK surgery on the named plaintiffs, there is a "serious standing question." *Id.* (citing *Easter*, 381 F.3d at 961-62). The Ninth Circuit rejected the

plaintiffs' attempt to sue the second group of doctors because the "allegations of conspiracy and aiding and abetting" are "insufficient to establish standing or to survive a motion to dismiss." *Id.* (citing *Lujan*, 504 U.S. at 561).

*Perez* is analogous to the instant case because like the second group of doctors who did not perform surgery on the *Perez* plaintiffs, the Store Defendants (except Walmart) and Decathlon had absolutely no contact with the Plaintiffs. Plaintiffs only bring vague allegations of a conspiracy (with respect to the Store Defendants except Walmart) and aiding and abetting (with respect to Decathlon's funding of CEC), but fail to show that the Store Defendants (except Walmart) or Decathlon actually caused Plaintiffs' alleged injury. Thus, like the second group of doctors in *Perez*, the Store Defendants (except Walmart) and Decathlon cannot be sued by these Plaintiffs.

In response, the Plaintiffs cite to *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) ("*NOW*"). In *NOW*, the United States Supreme Court ruled on a civil RICO case involving allegations that a "coalition of antiabortion groups" and "other individuals and organizations that oppose legal abortion" were members of a "nationwide conspiracy to shut down abortion clinics through a pattern of racketeering activity." *Id.* at 252-53. The conspiracy was alleged to have involved "threatened or actual force, violence, or fear to induce [plaintiff] clinic employees, doctors, and patients to give up their jobs, give up their economic right to practice medicine, and give up their right to obtain medical services at the clinics." *Id.* at 253. The Supreme Court held that there was standing to sue the defendants, the coalition of antiabortion groups as well as individuals and organizations that oppose legal abortion. *Id.* at 256.

However, *NOW* does not control the outcome of this case. *NOW* is distinguishable because there, the plaintiffs specifically pleaded that defendants "conspired to use force to induce clinic staff and patients to stop working and obtain medical services elsewhere." *Id.* Though there were multiple defendants in *NOW*, the question of whether some defendants participated in the activities that allegedly injured the plaintiffs, and some did not was not before the Supreme Court. The Supreme Court lumped all the *NOW* defendants together and held that plaintiffs' allegations as to all defendants were sufficient to show standing. *Id.*

1  Here, the situation is vastly different because there is a subgroup of Defendants who

2  Plaintiffs explicitly acknowledge have had absolutely nothing to do with the named Plaintiffs, a

3  situation with which the *NOW* court was never confronted. The only common element tying the

4  subgroup of Defendants in the instant case together is their participation in or funding of CEC's

5  program. As the Ninth Circuit held in *Perez*, "allegations of a conspiracy and aiding and abetting"

6  simply are not enough to demonstrate the traceability of injury to certain defendants if those

7  defendants had nothing to do with the named plaintiffs. 711 F.3d at 1113.

8  Therefore, the Court GRANTS the motion to dismiss for lack of standing with respect to

9  Burlington Coat Factory, Bloomingdales, Kroger, Sportsman's Warehouse, 99 Cents Only, Save

10  Mart, and Decathlon. Because further amendment of the complaint would be futile because the

11  Plaintiffs' alleged injuries are not traceable to these dismissed defendants under controlling Ninth

12  Circuit precedent in *Perez*, the Court DENIES leave to amend. *See Leadsinger, Inc.*, 512 F.3d at

13  532. Furthermore, because the Court dismissed these Defendants on Article III grounds, the Court

14  need not address the question of whether these Defendants had statutory standing.

15  **C.  Failure to State a RICO Claim**

16  All Defendants argue that Plaintiffs have failed to state a claim because Plaintiffs have

17  failed to specify *which* portion of the RICO statute Defendants are alleged to have violated. The

18  Court finds Defendants' argument persuasive.

19  There are 4 possible variants of a RICO claim. *See* 18 U.S.C. §§ 1962(a)-(d). "Although

20  some of the subsections have the same element (e.g. pattern of racketeering), each subsection has

21  its own separate pleading requirement." *Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*, 2007

22  WL 2088381, at *2 (S.D. Cal. July 17, 2007); *see also Molus v. Swan*, 2007 WL 2326132, at *3

23  (S.D. Cal. Aug. 13, 2007) ("Each count under a specific RICO section must plead additional

24  required elements."); *Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co., Inc.*, 711 F.

25  Supp. 1016, 1021 (E.D. Cal. 1989) ("The precise requirement for establishing a civil RICO cause

26  of action depends on which subsection of the statute a plaintiff invokes . . . ."); *Reynolds v. East

27  Dyer Dev. Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989) ("[T]he different RICO sections require

28

17

1   plaintiffs to prove different things. For example, under § 1962(c), the plaintiff must show that the

2   enterprise and the defendant are different entities; under § 1962(a), however, the defendant may be

3   the enterprise.").

4       Here, Plaintiffs plead that Defendants have violated "18 U.S.C. § 1962, *et seq.*" FAC at

5   Count I. Plaintiffs have not pleaded which subsection of the RICO statute the Defendants are

6   accused of violating. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement

7   of the claim showing that the pleader is entitled to relief." Plaintiffs' pleadings are therefore

8   inadequate.

9       Plaintiffs counter by arguing that pleading in the alternative is acceptable under Federal

10  Rule of Civil Procedure 8(a)(3). Opp. at 22 n.28. However, Plaintiffs have not plead any

11  subsection, much less any in the alternative.

12      Moreover, allegations must put defendants "on sufficient notice of the particular

13  misconduct alleged to permit [defendants] to prepare a defense to Plaintiffs' claims." *Eidson v.*

14  *Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1236 (N.D. Cal. 2014). As noted above, the various

15  subsections of the RICO statute have different pleading requirements, so without knowing which

16  subsection or subsections Plaintiffs claim Defendants have violated, Defendants are not put on

17  notice of what they must defend against. *See also Poindexter v. Stuteville*, 2012 WL 13035041, at

18  *4 (W.D. Okla. May 10, 2012) ("The instant complaint does not allege which one (or ones) of

19  these categories [of prohibited behavior in the RICO statute] is the basis of plaintiffs' RICO claim.

20  This failure prohibits defendants from determining with any certainty the nature of the RICO

21  claim they must defend against."); *Anvan Realty & Mgmt. Co. v. Marks*, 680 F. Supp. 1245, 1247

22  (N.D. Ill. 1988) (dismissing RICO claim because plaintiffs failed "to specify which subsection of

23  § 1962 defendants have allegedly violated).

24      Thus, because Plaintiffs have not specified which portion of the RICO statute Defendants

25  are alleged to have violated, the Court GRANTS the motion to dismiss for failure to state a RICO

26  claim as to all Defendants.

27      Because the Court has already granted the motion to dismiss with prejudice for lack of

28

Case No. 18-CV-02125-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING AS MOOT MOTION TO TRANSFER

*United States District Court*
*Northern District of California*

standing over Burlington Coat Factory, Bloomingdales, Kroger, Sportsman's Warehouse, 99 Cents Only, Save Mart, and Decathlon, amendment of the allegations as to these Defendants is futile, and thus is DENIED. Accordingly, the Court GRANTS the motion to dismiss for failure to state a RICO claim as to Burlington Coat Factory, Bloomingdales, Kroger, Sportsman's Warehouse, 99 Cents Only, Save Mart, and Decathlon with prejudice.

As to the Individual Defendants and Walmart, the Court GRANTS leave to amend because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith. *See Leadsinger, Inc.*, 512 F.3d at 532.

### D. Transfer to the District of Utah

The Individual Defendants, Walmart, Sportsman's Warehouse, Save Mart, 99 Cents Only, and Decathlon argue that "[i]f this case is not dismissed for lack of jurisdiction, it should be transferred to the District of Utah." Mot. at 29. As the Court held above, the case is being dismissed for lack of jurisdiction as to all Defendants except 99 Cents Only, Save Mart, and Decathlon (which did not challenge jurisdiction). Thus, the Court need not address these Defendants' transfer arguments and DENIES the motion to transfer as moot.

However, the Court notes that there is strong evidence of forum shopping in this case. First and foremost, Plaintiffs have chosen not to sue CEC even though Plaintiffs have a contractual relationship with CEC and paid their respective $400 and $500[7] to CEC to participate in CEC's program. FAC at ¶¶ 10-12. If there was a RICO conspiracy as Plaintiffs allege, CEC would be the hub and the Store Defendants would be spokes, as is illustrated by Plaintiffs' diagram on page 3 of the amended complaint. Yet, Plaintiffs have chosen not to sue CEC, the hub of the alleged RICO conspiracy. The reason for Plaintiffs' decision is simple. Plaintiffs want to skirt the choice of law provision and forum selection clause in Plaintiffs' contracts with CEC that explicitly provide that: the "Agreement is governed by the civil laws of the State of Utah in all respects, and the parties

---

[7] Plaintiff John Roe has not paid his outstanding fee to CEC.

1    hereto consent to exclusive jurisdiction and venue in the states [sic] courts of Utah County, State

2    of Utah." Mot. at 4.

3          Further proof that Plaintiffs are trying to skirt the choice of law provision and forum

4    selection clause in their contracts with CEC is the fact that Plaintiffs have sued 3 co-founders of

5    CEC, 2 members of CEC's board of directors, 2 current CEC corporate officers, and 2 CEC

6    former employees. FAC at ¶¶ 13-21. None of these 9 Individual Defendants are alleged to be

7    California residents. *Id.* How curious that Plaintiffs would sue so many CEC individuals yet

8    choose not to sue CEC, the entity who ran the CEC program in which Plaintiffs participated, to

9    whom Plaintiffs paid their fees, with whom Plaintiffs contracted, and the hub of the alleged RICO

10   conspiracy.

11         Further evidence of forum shopping is the fact that Plaintiffs do not reside in California

12   and their injuries did not occur in California. Specifically, Plaintiff Jane Doe, a resident of

13   Loganville, Georgia, was accused of shoplifting from a Walmart store in Snellville, Georgia. FAC

14   at ¶ 10. Plaintiff Mary Moe, a resident of Hilliard, Florida, was accused of shoplifting from a

15   Walmart store in Jacksonville, Florida. *Id.* at ¶ 11. Plaintiff John Roe, a resident of Houston,

16   Texas, was accused of shoplifting from a Walmart store in Alvin, Texas. *Id.* at ¶ 12. Moreover,

17   Plaintiffs' counsel is based in Boston, Massachusetts. ECF No. 131.

18         Finally, Plaintiffs added 99 Cents Only and Save Mart, which are alleged to be

19   headquartered in California, after defendants informed Plaintiffs' counsel that defendants planned

20   to seek transfer and disputed this Court's jurisdiction. Mot. at 3 n.5. Consistent with a forum

21   shopping motive, Plaintiffs' allegations against 99 Cents Only and Save Mart are thin at best.

22   Plaintiffs do not allege that 99 Cents Only and Save Mart had an agreement or any ongoing

23   relationship with CEC. FAC at ¶¶ 47-48. Plaintiffs merely allege that 99 Cents Only and Save

24   Mart have referred shoplifters to the CEC program in the past. *Id.* Moreover, as discussed above,

25   Plaintiffs do not have Article III standing to sue 99 Cents Only and Save Mart, and thus, these

26   Defendants have been dismissed with prejudice.

27         If the remaining Defendants in this case wish to bring another motion to transfer to the

28

District of Utah, they must show, *inter alia*, that the action "could have been brought" in the District of Utah, 28 U.S.C. § 1406(a), meaning that the District of Utah could have exercised personal jurisdiction over the remaining Defendants had the action commenced there, Wright & Miller, *Federal Practice and Procedure* § 3827 (4th ed. 2018).

Moreover, Defendants' reliance on 28 U.S.C. § 1404(a) as the statute authorizing transfer is questionable, as § 1404(a) requires the transferring Court (i.e., this Court) to be a proper venue in which the case is brought. Wright & Miller, *Federal Practice and Procedure* § 3841 (4th ed. 2018). Thus, transfer under § 1404(a) would not be proper if this Court does not exercise personal jurisdiction over the Defendants.

### E. *Forum Non Conveniens*

The Individual Defendants move to dismiss under the doctrine of *forum non conveniens*. Mot. at 36. The Court DENIES as moot the motion to dismiss under *forum non conveniens* as the Court has already dismissed the Individual Defendants from this case on other grounds. However, if the remaining Defendants file another *forum non conveniens* motion, Walmart must establish why it is a beneficiary of Plaintiffs' contracts with CEC.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss without prejudice as to the Individual Defendants and Walmart. The Court GRANTS the motion to dismiss with prejudice as to Defendants Burlington Coat Factory, Bloomingdales, Kroger, Sportsman's Warehouse, 99 Cents Only, Save Mart, and Decathlon. The Court DENIES the motion to transfer and the motion to dismiss under the doctrine of *forum non conveniens* as moot. If Plaintiffs elect to file an amended complaint against the Individual Defendants and Walmart, Plaintiffs must do so within 30 days of this Order. If Plaintiffs fail to file an amended complaint within 30 days or fail to cure the deficiencies identified in this order, the case will be dismissed with prejudice. Plaintiffs may not add new causes of action or new parties without stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: February 8, 2019

Case No. 18-CV-02125-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING AS MOOT MOTION TO TRANSFER

Lucy H. Koh
_____
LUCY H. KOH
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28